# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| Trustees of the Teamsters Local 631 Security Fund for Southern Nevada et al., <br><br> Plaintiffs, <br><br> vs. <br><br> Knox Installation - Dismantling and Services, Inc., <br><br> Defendant. | No: 2:12-cv-1689-JAD-GWF <br><br> **Order Granting Amended Motion for Default Judgment (Doc. 11)** |

Currently before the Court is Plaintiffs the Trustees of the Teamsters Local 631 Security Fund for Southern Nevada (Local 631) and the Trustees of the Teamsters Convention Industry Training Fund's (Training Fund) (collectively, Trust Funds) Amended Motion for Default Judgment (Doc. 11), seeking entry of a default judgment against Defendant, Knox Installation (Knox) in the amount of $117,209. The motion is unopposed. Doc. 13.[1] For the reasons set forth below, the Motion is granted in part and denied in part, and the Trust Funds are awarded $110,893 in damages against Knox, as well as additional interest from May 1, 2013, through the date of entry of judgment.

## I.
## Background

This action arises under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001-1500. Doc. 1, p. 1. The Plaintiff Trust Funds, who allege that they are ERISA fiduciaries, have sued Knox for unpaid employee benefit plan

---

[1] The Trust Funds filed the instant Notice of Non-Opposition.

contributions that Knox owed them under a Collective Bargaining Agreement (CBA). *Id.* at 2.[2] The Trust Funds seek an award of money damages against Knox for (1) unpaid contributions, (2) liquidated damages, (3) interest, (4) court costs, and (5) attorney's fees, as well as (6) "other equitable relief as provided by ERISA, including but not limited to injunctive relief." *Id.* at 3.[3]

Knox was served with a copy of the Complaint, but failed to timely file and Answer or otherwise respond. *See* Docs. 4, 5. On November 5, 2012, the Trust Funds moved for an entry of clerk's default under Federal Rule of Civil Procedure 55(a). Doc. 6. The clerk entered a default against Knox the next day. Doc. 7. On April 16, 2013, the Trust Funds moved for a default judgment. Doc. 11.[4]

## II.
### Discussion

The Trust Funds have requested affirmative relief in the form of monetary damages, and properly complied with the requirements for entry of a default judgment, by first applying and obtaining a clerk's entry of default pursuant to Fed R. Civ. Proc. 55(a), and then moving the Court for entry of a default judgment pursuant to Fed. R. Civ. Proc. 55(b)(2).[5] Therefore, the Court may consider the merits of their motion.

Fed. R. Civ. Proc. 55 provides several mechanisms for obtaining a default judgment against a party who has failed to plead or otherwise respond to claims brought against it. First, where a party fails to plead or otherwise defend a claim for affirmative relief, and this failure is "shown by affidavit or otherwise," the clerk must enter that party's default under

---

[2] Plaintiffs allege that the CBA incorporates by reference the Trust Agreements which both establish the Trust Funds and establish the stream of payments. *Id.* at 2.

[3] The Trust Funds' motion for a default judgment does not incorporate this sixth claim.

[4] Plaintiffs originally moved for a default judgment on December 10, 2012, Doc. 8, which they subsequently moved to vacate. Doc. 10. The Court granted the Trust Funds' Motion to Vacate in a Minute Order. Doc. 12.

[5] Fed. R. Civ. Proc. 55(b)(1)-(2) both provide that a party against whom a default judgment is sought must not be a minor or an incompetent person. As Knox is not a natural person, this factor is inapposite.

Fed. R. Civ. Proc. 55(a). After entry, the movant must request a default judgment from the Court under Fed. R. Civ. Proc. 55(b)(2). *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986); *Trustees of the Bricklayers & Allied Craftworkers Local 13 Defined Contribution Pension Trust for Southern Nevada v. Tumbleweed Development, Inc.*, 2013 WL 143378, at *2 (D. Nev. Jan. 11, 2013) (citing *Eitel*).

A district court has discretion to enter a judgment by default, which typically turns on the consideration of seven factors: (1) potential prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the amount of money at stake in the action; (5) the potential disputes as to material facts; (6) whether the default was due to excusable neglect; and (7) the strong federal policy favoring adjudications on the merits. *See Eitel*, 782 F.2d at 1471-72. When applied to the facts of this case, these factors demonstrate that a default judgment is warranted.

**A.    Possibility of Prejudice, Substantive Merits, and Sufficiency of Complaint**

The Court finds that the first, second, and third *Eitel* factors all weigh in favor of a default judgment. As to the first factor, the Trust Funds will likely suffer potential prejudice if default judgment is not entered, as Knox has failed to respond to the Complaint. As to the second and third factors, the Trust Funds' Complaint appears both sufficient and to have merit because it properly identifies the plaintiffs' status as ERISA fiduciaries, describes Knox's ERISA liability in failing to satisfy its payment obligations, and sets forth the statutory basis for the right to prosecute this action. Thus, the Complaint is both meritorious and sufficient under the liberal pleading standards of Fed. R. Civ. Proc. 8.

**B.    Sum of Money at Stake**

The fourth *Eitel* factor takes into account the amount of money at stake and the seriousness of the defendant's conduct, which involves an assessment of whether the recovery sought is proportional to the harm which the defendant's conduct has caused. *See Trustees of the Bricklayers*, 2013 WL 143378, at *3 (citations omitted). The amount of money at stake here - $117,209 - is plainly significant. *See id.* (finding that amount in controversy of less than $20,000 was significant in ERISA benefits action). The harm that

Knox's nonpayment has caused is also clearly proportional to the recovery sought. Therefore, the fourth factor weighs in favor of granting a default judgment.

### C.     Possible Dispute as to Material Facts

The fifth *Eitel* factor relates to potential disputes about material facts. Here, a number of material facts have already been deemed admitted as a matter of law. "An allegation - other than one relating to the amount of damages - is admitted if a responsive pleading is required and the allegation is not denied." Fed. R. Civ. Proc. 8(b)(6). Here, Knox has failed to file any responsive pleading or deny the Trust Funds' allegations. The facts to be accepted as true are as follows:[6]

1. The Trust Funds are fiduciaries for purposes of ERISA. Doc. 1, p. 1.
2. Knox acted as an employer within the State of Nevada employing persons who perform work covered by a Collective Bargaining Agreement (CBA) between Knox and Local 631. *Id.* at 2.
3. The CBA incorporates by reference the Trust Agreements establishing the Trust Funds. *Id.*
4. Pursuant to the CBA, Trust Agreements, and ERISA, Knox is obligated to contribute to the Trust Funds on behalf of its covered employees. *Id.*
5. Knox failed to contribute all required Trust Fund contributions owed on behalf of its covered employees. *Id.*
6. Due to Knox's failure to timely pay the amounts requested, the Trust Funds requested a judgment for unpaid contributions, liquidated damages, interest, court costs and attorney's fees as required by ERISA and the Trust Agreements. *Id.* at 3.

Moreover, the damages that the Trust Funds request, which might otherwise be disputed, cannot be taken into consideration as a matter of law. *See Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977) (citation omitted) ("[t]he general rule of law is that

---

[6]The language of the Trust Funds' allegations has been paraphrased from the original.

upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true."); *see also Trustees of the Construction Industry and Laborers Health and Welfare Trust v. Bust Busters Air Quality Management, L.L.C.*, 2013 WL 876237, at *1-*2 (D. Nev. Mar. 7, 2013) (citing *Geddes*).

Accordingly, the Court finds that no genuine dispute of material fact would preclude granting the Trust Funds' Motion, aside from the determination of a monetary award that cannot be deemed admitted by operation of law. Thus, the fifth factor weighs in favor of a default judgment.

**D.     Excusable Neglect**

The sixth *Eitel* factor considers whether the default has resulted from excusable neglect. There is no evidence to suggest excusable neglect here. The record reflects that a Summons was issued to Knox on September 26, 2012, Doc. 4, which was hand-delivered on October 4, 2012. Doc. 5, p. 2. The Trust Funds moved for clerk's entry of default on November 5, 2012, after Knox's opportunity to answer or otherwise respond expired under Fed. R. Civ. Proc. 12. Doc. 6. Therefore, Knox was provided with an adequate opportunity to respond to the Trust Funds' allegations. Since that time, Knox has had more than ten months to offer any excusable neglect facts and challenge the entry of default. As Knox has failed to do so, the Court finds that the sixth *Eitel* factor weighs in favor of entering a default judgment.

**E.     Decision on the Merits**

The final *Eitel* factor takes into consideration the strong policy preference for disposing of cases on their merits. *See Eitel*, 782 F.2d at 1472. Knox's failure to answer the Trust Funds' Complaint or otherwise engage in the litigation process casts doubt over the feasibility of any eventual decision on the merits. The Court, therefore, finds that the ordinary policy preference in favor of decisions on the merits will not, without more, preclude entry of a default judgment.

In their totality, the *Eitel* factors weigh in favor of a default judgment.

**F.   Determination of Default Award**

Having found that the Trust Funds are entitled to a default judgment, the final question is the amount of the monetary award. Under ERISA, "[e]very employer who is obligated to make contributions to a multi-employer plan under the terms . . . of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such . . . agreement." 29 U.S.C. § 1145. Fiduciaries like the Trust Funds may enforce Section 1145 against collective bargaining agreements, and the Court is authorized to award –

    (A) the unpaid contributions,
    (B) interest on the unpaid contributions,
    (C) an amount equal to the greater of –
         (i) interest on the unpaid contributions, or
         (ii) liquidated damages provided for under the plan in an amount not in
              excess of 20 percent (or such higher percentage as may be
              permitted under Federal or State law) of the amount determined by
              the court under subparagraph (A),
    (D) reasonable attorney's fees and costs of the action, to be paid by the
         defendant, and
    (E) such other legal or equitable relief as the court deems appropriate.

29 U.S.C. § 1132(g)(2). Interest on unpaid contributions as described above is determined by using the rate provided under the plan, if one is provided. 29 U.S.C. § 1132(g).

The Trust Funds aver that delinquent contributions are owed from the period of May 2012 to February 2013. Doc. 11, p. 4. They contend that they are owed a total of $117,209, which is the total of: (1) the unpaid contributions ($93,515); (2) interest on the unpaid contributions ($9,523), (3) liquidated damages ($18,703), (4) attorney's fees and costs ($3,968), and (5) anticipated attorney's fees and costs ($5,000), all less two late payments, totaling $13,500, which were received.[7] *See* Doc. 11, p. 6.

**1.   Contributions**

The Trust Funds contend that they are owed a total of $93,515 in plan contributions between May 2012 and February 2013. Doc. 11, pp. 3-4.[8] In support of their entitlement,

---

[7] These payments were for $6,000 and $7,500, respectively. *Id.*

[8] The Trust Funds have rounded the requested amounts up and down to the nearest whole dollar to $.50. The Court finds this method reasonable, and adopts it for all other amounts at issue in the Motion.

6

the Trust Funds have submitted examples of the remittance payments due under the CBA. *See* Doc. 11-1, pp. 20-36.  The Court accepts this documentation as demonstrating their entitlement to the requested contributions as a general matter, and finds upon review of the monthly invoices that May 2012 ($19,677), June 2012 ($10,839), July 2012 ($8,114), August 2012 ($3,988), September 2012 ($21,420), November 2012 ($3,810), and December 2012 ($2,804) are accurate and are awarded in full.  Doc. 11-1, pp. 20-26, 34-35.[9]

However, review of the monthly invoices shows miscalculation of several amounts. For example, January 2013 and February 2013 appear to be over-calculated by $579 and $495, respectively.  For January 2013, the Trust Funds claim that Knox has admitted that it owed $7,964 in unpaid contributions; however, the applicable invoice shows a total of only $7,385.  *See* Docs. 11, p. 4; 11-1, p. 35.[10]  Similarly, for February 2013, the Trust Funds claim that Knox admitted that it owed $6,815 in unpaid contributions; however, the applicable invoice shows a total of only $6,320.  *See* Docs. 11, p. 4; 11-1, p. 36.  The Trust Funds fail to explain this discrepancy either in connection with what Knox admitted it owed or the amount to which the Trust Funds are entitled.  Thus, the Court awards the Trust Funds $7,385 for January 2013, and $6,320 for February 2013.

By contrast, October 2012 is apparently under-calculated by $4,732.[11]  However, the Trust Funds have accepted the $8,086 figure as a reflection of what Knox admitted it owed for that month, and fail to argue why they are entitled to a larger payment.  Therefore, the Court awards the Trust Funds the $8,087 they requested for this entry.

Thus, the total unpaid contribution award is not $93,515, but $92,441.

---

[9]Technically, September 2012 is miscalculated, but the discrepancy is *de minimums* and does not affect the Trust Funds' rounding up to $21,420 because Trust Funds' Invoice calculates the total amount as $21,419.64, whereas the amount in question is actually $21,419.54.  *Id.* at 27-29.

[10]The invoice total is $7,496; however, calculation of the individual hours and amounts shows a total figure of $7,385.  *Id.*

[11]The invoice total is $13,119.48; however, calculation of the individual hours and amounts shows a total figure of $12,818.  *Id.* at 30-32.  The Invoice entries are divided into weekly hours totals, at 10/7, 10/14, 10/21, and 10/28.  *See id.* at 31-32.  The $8,086 amount reflects the total hours from the "10/7" column only.  This $8,086 figure also appears on the "trust fund transmittal" page, which summarizes the amount due in October 2012.  *Id.* at 30.

7

### 2. Interest

The Trust Funds contend that Knox was contractually obligated to pay interest of 18% on any delinquent plan contributions pursuant to a Restated Collection Policy of Procedures (Policy). Docs. 11, p. 3; 11-1, pp. 6-18. The Policy specifies that interest is to be computed as "simple interest, from the Due Date to the date of payment in full." *Id.* at 7. The Trust Funds have calculated the amount of interest by multiplying each month's delinquency by 0.18 and dividing the result by 365 days per year. *Id.* at 4. The result is then multiplied by the number of days the contribution is overdue. *Id.* The Trust Funds have calculated proposed totals through May 1, 2013. *Id.* The Court accepts the proposed formula for calculating interest on Knox's delinquent payments, and finds that $9,496 in interest on the unpaid plan contributions shall be awarded to the Trust Funds, as well as additional accrued interest in an amount calculated from May 1, 2013, through the date of entry of judgment.[12]

### 3. Liquidated Damages

The Trust Funds contend that, under the policy, Knox must pay liquidated damages equal to 20% of each monthly delinquent contribution amount, which they contend is $18,703. Doc. 11, p. 3. ERISA provides that the Court shall award liquidated damages for delinquent plan contributions. 29 U.S.C. § 1132(g)(2)(C). Courts calculate the damages amount at the rate specified in the plan agreement, if that rate is higher than the delinquent interest amount. *Id.*

The Policy specifies liquidated damages of 20%, which is greater than the 18% interest rate and thus allowable under the prevailing statutes. *See* Doc. 11-1, pp. 6-7. Thus, the Court finds that $18,488 in liquidated damages on the unpaid plan contributions shall also be awarded to the Trust Funds.[13]

---

[12] For May 2012, the total plan-contribution interest figure is $3,057, not $3,056; the Court awards $3,057. For the period between June 20912 and December 2012, the Court finds that the Trust Funds' proposed amounts are accurate, and awards the requested sum of $6,051. Doc. 11, p. 4. For January 2013 and February 2013, for which the Court made downward adjustments to the plan contributions owed, the Court used the Trust Funds' formula to calculate new interest amounts, which are $255 for January 2013, and $133 for February 2013. The sum of $3,057, $6,051, $255 and $133 is $9,496.

[13] This amount reflects the downward adjustment of the total contribution amount $93,515 to $92,441.

### 4. Attorney's Fees and Costs

The Trust Funds contend that Knox is liable for the Trust Funds' "legal fees and costs incurred attempting to *collect* the delinquency." Doc. 11, p. 3 (emphasis added). ERISA provides that "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). The Court finds that reasonable attorney's fees and costs are routinely granted in ERISA defaults, and the Trust Funds are entitled to attorney's fees here. *See, e.g.*, *Trustees of the Construction Industry*, 2013 WL 876231; *Trustees of the Bricklayers*, 2013 WL 143378.

In ERISA cases, courts base attorney fee award amounts on the "lodestar" calculation set forth in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). *Van Gerwen v. Guarantee Mutual Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000). Thereunder, the Court determines (1) a reasonable fee by multiplying "the number of hours reasonably expended in the litigation" by (2) a "reasonable hourly rate." *Hensley*, 461 U.S. at 433. The lodestar should only be modified in exceptional cases. *See City of Burlington v. Dague*, 505 U.S. 557, 562 (1992).

### a. Past Fees and Costs

The court considers the experience, skill, and reputation of the attorney requesting fees when determining the reasonableness of an hourly rate. *Webb v. Ada County*, 285 F.3d 829, 840 & n.6 (9th Cir. 2002). This rate is calculated at the "prevailing market rate in the relevant community for similar services by attorneys of reasonably comparable skills, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). The Trust Funds have submitted an Affidavit from Bryce C. Loveland, who affirms that he is an attorney of record for the Trust Funds. Doc. 11-1, p. 2. Loveland attests that "employee benefits law is very complex and the work performed by the Trust Funds' counsel is highly specialized." *Id.* at 3. Loveland requests rates of $300 for partner-level work, $270-80 for Associate-level work, and $160-65 for paralegal work. The Court finds each of these rates to be a reasonable reflection of the rates in this market, and adopts them as requested.

As to the reasonableness of the hours expended, a movant must "submit evidence supporting the hours worked." *Hensley*, 461 U.S. at 433. "Where the documentation of hours

9

is inadequate, the district court may reduce the award accordingly." *Id.* The Trust Funds have submitted contemporaneous billing entries from Loveland's law firm, Brownstein Hyatt Farber Schreck. Doc. 11-1, pp. 38-47. Loveland also swears that he has reviewed these billing entries, that they reflect hours billed by attorneys and paralegals, and "do not include the hours expended by the support staff and other officer personnel." *Id.* at 3.[14] The Court finds that these records satisfy the requirements set forth in *Hensley*, and awards the $3,968 as requested.

### b.    Anticipated Fees and Costs

The Trust Funds have also requested that the Court award the arbitrary sum of $5,000 in "anticipated" attorney's fees and costs. The Trust Funds provide no supporting documentation as to why such costs are reasonable, and the Policy does not contain a provision allowing for a prospective lump sum payment of attorney's fees. *See* Doc. 11-1, pp. 13-15. Under the lodestar method, the Trust Funds have failed to furnish adequate documentation entitling them to such "anticipated" post-judgment attorney's fees and costs. Their request for these fees and costs is therefore disallowed.

In sum, the Court awards the Trust Funds the following monetary damages against Knox:

| | |
|---|---|
| Contributions | $92,441 |
| Interest on the Unpaid Contributions | $9,496 + interest amount from May 1, 2013 through date of entry of judgment |
| Liquidated Damages | $18,488 |
| Attorney's Fees / Costs (past) | $3,968 |
| Less late payments received | ($13,500) |
| **Total:** | **$110,893 + (interest from May 1, 2013 through date of entry of judgment)** |

---

[14]The entries are comprised of $3,477 for attorney and paralegal time, and $491 in costs. *See* Doc. 11-1. Loveland also states that certain billing entries have been redacted to protect "potentially privileged information." Doc. 11-1, p. 3. As elsewhere in the Motion, the Court has rounded these amounts to the nearest $.50.

### III.

### Conclusion

**IT IS ORDERED** that the Trust Funds' Motion for Default Judgment (Doc. 11) is **GRANTED** in part and **DENIED** in part. Judgment is hereby entered in favor of the Trust Funds and against Knox in the amount of $110,893, plus interest on the $92,441 in unpaid plan contributions from May 1, 2013 through the date of the entry of judgment. The clerk shall enter judgment accordingly.

DATED: September 9, 2013.

_____
JENNIFER A. DORSEY
UNITED STATES DISTRICT JUDGE